

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | | |
|---|---|---|
| BRENDA MARTINEZ and JOEL MARTINEZ, | § § § | |
| Plaintiffs, | § | |
| vs. | § | CIVIL ACTION NO. 3:20-cv-0744-MGL |
| | § | |
| ROBERT SARRATT and CEVA LOGISTICS, U.S., INC., | § § § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER
### GRANTING PLAINTIFFS' MOTION TO REMAND

## I.    INTRODUCTION

Plaintiffs Brenda and Joel Martinez (the Martinezes) initially brought this negligence action against Defendant Robert Sarratt (Sarratt). In their amended complaint, they added Sarratt's employer, CEVA Logistics, U.S., Inc. (CEVA) (collectively, Defendants) to the action. The Martinezes assert state claims of negligence, gross negligence, and negligence per se against Defendants. They seek both actual and punitive damages.

The Martinezes filed this case in the Richland County Court of Common Pleas. But, Sarratt removed it to this Court, contending the Court has diversity jurisdiction over the matter under 28 U.S.C. § 1332. Although the general rule is that all defendants must consent to removal, inasmuch as the Martinezes had not yet served CEVA when Sarratt removed the case, CEVA's consent was not required when the case was removed. *See* 28 U.S. Code § 1446(b)(2)(A) ("When a civil action

is removed . . . , all defendants who have been properly joined and served must join in or consent to the removal of the action.").

Pending before the Court is the Martinezes' motion to remand the case to state court. Having carefully considered the motion, the notice of removal, the response, the reply, the record, and the relevant law, the Court is of the opinion it should grant the motion.

## II.    FACTUAL AND PROCEDURAL HISTORY

The Court takes the following factual allegations from the Martinezes' amended complaint:

"On or about February 27, 2019, [Sarratt], traveling East on I-20 in Richland County in a tractor trailer . . . in the center lane improperly changed lanes at approximately sixty . . . mph without notice and struck (Collision) [the Martinezes] traveling in their 2016 GMC SUV . . . (Vehicle)." *Id*. ¶ 9 (internal quotation marks omitted). "As a result of the Collision, [the Martinezes] and their Vehicle were forced into the highway barrier where their Vehicle was totally disabled." *Id*. ¶ 10.

The Martinezes "were subsequently struck by a flatbed truck and then a SUV causing further damage and injury." *Id*. ¶ 11. "Officer Montes arrived on the scene and determined that [the Martinezes] were blameless in the Collision and that [Sarratt] was at fault." *Id*. ¶ 12.

The Martinezes "were transported by EMS to Providence Hospital for emergency medical treatment." *Id*. ¶ 13. They "suffered physical and emotional injury, received medical treatment, [and] incurred medical costs and property damage[ ] as a result of the Collision." *Id*. ¶ 14.

The Martinezes are "informed and believe that at all times relevant hereto Sarratt was acting within the course and scope of his employment with CEVA." *Id*. ¶ 4 . "Upon information and [belief], CEVA operates a commercial trucking fleet in portions of the United States, including the

2

State of South Carolina, and is licensed and operates as a commercial motor carrier under the rules and regulations of the U.S. Department of Transportation, Office of Motor Carriers." *Id*. ¶ 8.

As the Court noted above, after the Martinezes filed this action in state court, Sarratt removed it to this Court. The Martinezes then filed its motion to remand, Defendants filed their response, and the Martinezes filed a reply. The Court, having been fully briefed on the relevant issues, is prepared to adjudicate the motion.

## III.    STANDARD OF REVIEW

This Court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]" 28 U.S.C. § 1332(a)(1). As per 28 U.S.C. § 1441(a),

> [e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

*Id*. "The propriety of removal thus depends on whether the case originally could have been filed in federal court." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997).

There is no dispute as to whether the parties in this action are diverse. They are. The argument between the parties is whether "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332. When deciding who is correct, "[t]he [C]ourt . . . is limited to examining only that evidence of amount in controversy that was available at the moment the petition for removal was filed." *Chase v. Shop 'N Save Warehouse Foods, Inc*., 110 F.3d 424, 428 (7th Cir. 1997).

In a case such as this, "removal of [an] action is proper on the basis of an amount in controversy . . . if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" $75,000.  28 U.S.C. § 1446(c)(2)(B).  The party seeking removal bears the burden of establishing federal jurisdiction.  *In re Blackwater Sec. Consulting, LLC*, 460 F.3d 576, 583 (4th Cir. 2006).  As such, it is up to Defendants in this action to demonstrate, by a preponderance of the evidence, the $75,000 amount in controversy threshold has been satisfied.

A federal court's jurisdiction under the removal statutes amounts to an infringement upon state sovereignty.  *Shamrock Oil Corp. v. Sheets*, 313 U.S. 100, 108  09 (1941).  Accordingly, the statutory provisions regulating removal must be strictly applied.  *Id*. at 108.  A federal court must be careful not to extend its jurisdiction beyond the boundaries drawn by those provisions.  *Id*. at 109.

To insure that federal courts do not overstep constitutional bounds and delve into matters that are purely state law, federal precedent "scrupulously confine[s]" removal jurisdiction.  *Id.*  In fact, the Fourth Circuit maintains that "remand is necessary" where any doubt exists for removal jurisdiction.  *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir.1994).  Hence, removal is warranted only when absolutely essential under federal law.  *Id*.

## IV.    DISCUSSION AND ANALYSIS

As the Court has already noted, the dispute between the parties is whether the $75,000 controversy requirement of § 1332 is satisfied such that the Court has jurisdiction over the matter. Put differently, the sole question for the Court to answer is this: "Have Defendants established that it is more likely than not that the amount in controversy in the Martinezes' lawsuit against them exceeds $75,000, allowing the case to remain with this Court?"

4

Here, the amount in controversy is not evident from the face of the Martinezes' complaint.

In the request for relief, they ask for the following:

> WHEREFORE, having fully set forth their Complaint, the [Martinezes] pray that this Honorable Court inquire into the matters set forth and that:
>
> 1.   A jury trial be conducted as requested here and as stated above;
>
> 2.   The amount due [the Martinezes] for actual and punitive damages be ascertained and determined by [a] jury under the direction of this Court.
>
> 3.   An Order be entered against [Defendants] for the amount due as ascertained and determined by [a] jury under the direction of this Court.
>
> 4.   An Order be entered for such other and further relief as may be just and proper.

Amended Complaint at 4.

As noted in Federal Practice & Procedure,

> Special difficulties arise . . . when the amount in controversy is not apparent from the face of the plaintiff's state-court complaint. . . . Not surprisingly, the federal courts have had some difficulty in ascertaining the amount in controversy when the complaint is silent or inconclusive on the subject. Courts often look to the defendant's notice of removal for relevant information. Many other courts make an independent appraisal of the monetary value of the plaintiff's claim and may suggest that the defendant is free to do so. Occasionally, courts simply remand the action to the state court from which it was removed, reasoning that, as the record stands, the case is not removable. These decisions leave it to the parties to augment the record to clarify the amount in controversy.

14C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 14C Fed. Prac. & Proc. Juris.

§ 3725.1 (Rev. 4th ed. 2020) (footnotes omitted). In addition, some courts have concluded a

plaintiff's refusal to stipulate to no more than $75,000 in damages makes removal appropriate. *E.g.,* *McLain v. Am. Int'l Recovery, Inc.*, 1 F. Supp. 2d 628, 631 (S.D. Miss. 1998).

Having fully considered each of these approaches, the Court is unable to say it wholeheartedly agrees with any of them. And some, it outright rejects.

For instance, the Court endeavoring to make an independent appraisal of the monetary value of the Martinezes' claims would be, in the Court's estimation, an incorrect application of the law. To do so would not only eviscerate the burden of Defendants, as the removing party, to establish the existence of the jurisdictional amount in controversy, but in addition, it would be an inefficient use of scarce judicial resources. *See Mulcahey*, 29 F.3d at 151 ("The burden of establishing federal jurisdiction is placed upon the party seeking removal.").

To remand the case to the Richland County Court of Common Pleas absent any inquiry into the appropriateness of removal is an equally unsatisfactory approach. And, as the Court will thoroughly discuss below, the Court concludes the stipulation option is fatally flawed.

Having rejected all of the other approaches enumerated above, only the first option remains: looking to the notice of removal for pertinent information as to the amount in controversy. The Court thinks that to be a good place to start.

In Sarratt's notice of removal, he submits the following as the basis for removal:

> [The Martinezes'] Complaint is silent as to the amount in controversy. Sarratt is informed by [the Martinezes'] counsel that [they] would not stipulate to the fact that damages do not exceed $75,000. Based upon this information, . . . Sarratt submits there is sufficient evidence that the amount in controversy exceeds the jurisdictional threshold for removal.

Notice of Removal ¶ 11.

6

At first blush, considering a plaintiff's refusal to stipulate to a $75,000 cap on damages may seem like a reasonable measure for determining whether the amount in controversy requirement is satisfied. But, the Court declines to make such a leap. The Court's own experience, both on the bench and at the bar, as well as its understanding of the applicable law, counsels against adopting such a process.

Often times, a plaintiff is unable to reasonably gauge the value of a case at its onset. This is no less true for defendants. As then-district Judge Henry F. Floyd opined when presented with a similar situation, "The reality is that cases often evolve as they progress through litigation and the parties acquire more information pertaining to their claims and defenses." *Bell v. Qwest Communications Intern., Inc.*, Civil Action No. 8:11 00037 HFF, 2011 WL 2601566, at *5 (D.S.C. 2011).

"Requiring plaintiffs at the outset of litigation to enter into a binding stipulation regarding damages could seriously handicap them as the case progresses." *Id*. "As a result, it is understandable that, despite believing in good faith that their claims do not exceed the jurisdictional amount, many plaintiffs would decline to enter into such a binding stipulation."

Judge Floyd then went on to add this: "A plaintiff's refusal to stipulate to maximum damages does not establish that the claim exceeds $75,000. At best, it provides a tenuous and hypothetical inference." *Id*.

The Court agrees with Judge Floyd's reasoning. In addition, in the Court's firm opinion, for it to hold removal is proper when a plaintiff refuses to stipulate to a cap on damages would be in disagreement with the long established presumption that remand is proper when removal is questionable. Moreover, such an approach shifts the burden from the removing party to demonstrate removal is appropriate to the nonmovant to establish it is not. Consequently, the fact the Martinezes

decline to stipulate that damages do not exceed $75,000 does not amount to competent evidence as to the $75,000 requirement.

Looking to the notice of removal for relevant information, however, does not end the Court's inquiry. The Court will now consider any other competent evidence offered by the parties on the amount in controversy question. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014) ("[W]hen a defendant's assertion of the amount in controversy is challenged, . . . . both sides [should] submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied.").

In Defendants' effort to establish they have satisfied the $75,000 requirement, they have submitted the Martinezes' settlement offers for their claims. These offers are well in excess of $75,000. According to Defendants, this shows the jurisdictional amount requirement is met.

The Martinezes argue in their reply, however, that such evidence is disallowed by Rule 408 of the Federal Rules of Evidence. That rule, in pertinent part, provides: "Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction: . . . . conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority." *Id.*

Although settlement offers are inadmissable under Rule 408 to prove liability, however, the Court has found that other courts have concluded they can constitute admissible evidence to show the amount in controversy. *E.g.*, *Carroll v. Stryker Corp.*, 658 F.3d 675, 682 n.2 (7th Cir. 2011) ("Even though settlement offers are inadmissible to prove liability under Rule 408 of the Federal Rules of Evidence, they are admissible to show that the amount in controversy for jurisdictional purposes has been met."); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.3 (9th Cir.2002) (per curiam)

("A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim."). Nevertheless, although evidence of settlement offers may be permitted when determining the amount in controversy, they serve as only one indicator.

And, "[w]hile [a] settlement offer, by itself, may not be determinative, it counts for something." *Burns v. Windsor Insurance Co*., 31 F.3d 1092, 1097 (11th Cir. 1994). As another district court in this circuit noted, however, although "a settlement offer may count for something, what it counts for depends on the circumstances." *Upper Ohio Valley Italian Heritage Festival v. Burlington Ins. Co.*, Civil Action No. 5:18-120, 2018 WL 5284207, at \*4 (N.D. W.Va. 2018).

It then follows, of course, that a settlement demand in excess of $75,000 does not necessarily result in a district court concluding the jurisdictional amount is satisfied. *E.g., Williams v. Hodgson*, Civil Action No. 5:11-80, 2011 WL 3793328, at \*2 (N.D. W. Va. Aug. 24, 2011) (remanding the case where the plaintiffs demanded $190,000, stating that the demand was not enough proof that the requisite jurisdictional amount had been met).

Again calling on its own experience, the Court is well aware it is common for a settlement offer to be more about puffing and posturing than proof of anything, much less the value of the claims and the amount in controversy. They often overstate the value of the claim.

As another district court stated, "such a settlement offer is entitled to little weight in measuring the preponderance of the evidence." *Jackson v. Select Portfolio Servicing, Inc*., 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009). Conversely, a settlement offer that contains specific information supporting a plaintiff's claim for damages' suggests the plaintiff is giving her reasonable assessment of the value of her claims. *Id*.

The Court has carefully reviewed the two settlement offers. And, although they are somewhat specific, they fail to come close to supporting the Martinezes' monetary claims of

damages as stated in the settlement offers.  As such, they do not provide credible evidence the amount in controversy amounts to more than $75,000.

The Martinezes have also offered evidence concerning the amount in controversy issue.  In an affidavit submitted by their counsel, Chris S. Truluck (Truluck), he attests the only records he currently possesses show the Martinezes' damages are well below $75,000, and, except for property damage costs, he is unaware of any additional economic damages.  Truluck's Affidavit ¶¶ 1-4. Further, according to Truluck, Sarratt's insurance adjuster told him "The total value of this case does not warrant doing a mediation." *Id*. ¶ 6.  In addition, Truluck states he and Defendants' counsel both agreed in conversations with one another they did not expect a jury verdict in excess of $75,000. *Id*. ¶ 9.

Thus, in the Court's consideration of the evidence before it, as it already noted, the Martinezes' refusal to stipulate to the amount in controversy is not evidence the amount in controversy is satisfied.  And the Court does not find the settlement offers to be entitled to any weight.  Truluck's statement his records of damages are well below $75,000 and the evidence of Sarratt's adjuster stating "The total value of this case does not warrant doing a mediation," *id*. ¶ 6, weighs against a finding the amount in controversy has been satisfied.  The same goes for the evidence counsel for the Martinezes and counsel for Defendants both agreed they did not expect a jury verdict in excess of $75,000.  *Id*. ¶ 9.

Suffice it to say that the amount in controversy in this case is speculative at best.  And, speculation regarding the amount in controversy requirement fails to satisfy the burden that the removing party bears.  After all, this Court's jurisdiction cannot rest upon the metaphysical possibility that the jurisdictional amount may or may not be met now or at some point in the future.

Thus, the answer to the question of whether Defendants have established that it is more likely than not that the amount in controversy in the Martinezes' lawsuit against them exceeds $75,000 is "No." Consequently, remand is the necessary course.

But, the Court hastens to add that this determination does not necessarily end the matter. Although the court is unable to agree to the propriety of Sarratt's removal to this Court on the record presently before it, as per 28 U.S.C. § 1446(b)(3), "a notice of removal may be filed within [thirty] days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id*. Even so, it must do so within "[one] year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith . . . to prevent . . . [D]efendant[s] from removing the action." *Id* § 1446(c).

## V.     CONCLUSION

In light of the foregoing discussion and analysis, the Court concludes Defendants have failed to establish that the jurisdictional amount has been satisfied. Therefore, in the opinion of the Court, the Martinezes' motion to remand must be **GRANTED**. As such, this matter is **REMANDED** to the Richland County Court of Common Pleas.

**IT IS SO ORDERED**.

Signed this 16th day of April, 2020, in Columbia, South Carolina.

/s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE